Anne Goyne MITCHELL, Petitioner-
Appellant,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

Jane Isabell Goyne SIMS, Petitioner-
Appellant,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.

No. 28163.

United States Court of Appeals,
Fifth Circuit.

June 23, 1970.

Simpson, Circuit Judge, dissented.

Paul K. Kirkpatrick, Jr., John C. Blackman, Hudson, Potts & Bernstein, Monroe, La., for petitioner-appellant.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., U. S. Dept. of Justice, K. Martin Worthy, Chief Counsel, Bobby D. Burns, Atty., Internal Revenue Service, Benjamin M. Parker, Atty., Crombie J. D. Garrett, Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C. Fred B. Ugast, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before AINSWORTH, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

These appeals from the Tax Court involve the question of a wife's liability out of her separate property for federal income taxes on community income earned when she and her husband were residents and domiciliaries of Louisiana, a community property state. The Tax Court held that the wife is liable for the tax on one-half of all the community income regardless of whose efforts produced the income for the community and even though the wife did not file a return, renounced the community and received none of the community property upon the dissolution of the community. The Tax Court also held the wife liable for statutory penalties imposed by §§ 6651, 6653 and 6654 of the Internal Revenue Code of 1954.[1] The Court further held the transferee of the wife's separate property liable for the taxes under § 6901 of the Code. We disagree on the initial question of the wife's liability for the taxes and therefore reverse on all issues.

---

1. Penalties under § 6651(a) are imposed for failure to file a return, under § 6653 (a) for negligent failure to pay taxes that are due, and under § 6654 for failure to file estimated tax returns and pay the estimated taxes.

Anne and Emmett Mitchell were married on September 22, 1946. During the taxable years in question they lived under the Louisiana community of acquets and gains. For the taxable years beginning January 1, 1955, and ending on December 31, 1959, neither Mrs. Mitchell nor her husband filed federal income tax returns. During 1955 and 1956, Mrs. Mitchell was employed as a teacher and received salaries of $2700 and $1500 for the respective years. Income taxes were withheld from this income. It was stipulated that during the years in question all the income earned by both Mrs. Mitchell and her husband constituted community income, and the amount of this income is not in dispute. The Tax Court found as a matter of fact that Mrs. Mitchell did not know of her husband's finances and relied upon his assurances that their tax returns were timely filed and their taxes properly paid. She assumed that he signed her name to the income tax returns.

Mrs. Mitchell began living apart from her husband in July, 1960. On March 10, 1961, the Commissioner assessed income taxes and penalties against Mr. and Mrs. Mitchell. It was stipulated that Mrs. Mitchell did not receive or have knowledge of this assessment. On September 4, 1961, Mr. and Mrs. Mitchell were judicially separated; and on September 18, 1961, Mrs. Mitchell renounced the community of acquets and gains pursuant to Article 2410 of the Louisiana Civil Code.[2] Mr. and Mrs. Mitchell were divorced on October 11, 1962.

In 1964 Mrs. Mitchell inherited an undivided interest in her mother's estate. On December 23, 1964, she transferred this interest to her sister, Mrs. Jane Sims, without consideration. Thereafter, on September 30, 1966, the Commissioner determined that additional deficiencies existed.

The Tax Court held that under the Louisiana community property system the wife has such rights, claims and powers in the property and income of the marital community as are equivalent to ownership. This ownership interest made Mrs. Mitchell liable for one-half of the tax due on the community income for the period in question. The Court held that her renunciation of the community did not affect the tax liability because it read Article 2410 of the Louisiana Code as allowing the wife to exonerate herself solely from contractual debts of the community, whereas the tax liability was imposed by law.

The Tax Court also held Mrs. Mitchell liable for the penalties imposed by § 6651(a) of the 1954 Code for failure to file tax returns for the years in question because she did not have reasonable cause to rely on her husband's assertions that he had filed the returns. Penalties under § 6653(a) were also assessed because the Tax Court held that she acted negligently in failing to pay taxes that were due. The Tax Court further imposed penalties under § 6654 for failing to file estimated tax returns and pay the estimated taxes for each of the years 1955 through 1959.[3]

---

2. Article 2410 provides:

Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains.

3. The Court determined the total liabilities for the years in question as follows:

| | | *Addition to Tax* | | |
|---|---|---|---|---|
| YEAR | INCOME TAX | § 6651(a) | § 6653(a) | § 6654 |
| 1955 | $ 323.00 | $ 80.75 | $16.15 | $— |
| 1956 | 1,267.73 | 316.93 | 63.39 | 35.49 |
| 1957 | 453.00 | 113.25 | 22.65 | 12.68 |
| 1958 | 1,750.71 | 425.02 | 87.54 | 47.00 |
| 1959 | 871.34 | 173.24 | 43.57 | 17.27 |

plus interest on the above liabilities as provided by law from December 23, 1964, to the date of payment.

It was stipulated by both parties in the Tax Court that if Mrs. Mitchell were liable out of her separate property then the transferee without consideration of that property would likewise be liable. The Tax Court therefore found Mrs. Sims, the transferee, liable.

■ It is, of course, incumbent on us to examine Louisiana law to determine the nature and extent of the community interest owned by the wife because the state law determination of this interest is binding on federal courts in the adjudication of federal tax controversies. Poe v. Seaborn, 1930, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Bender v. Pfaff, 1930, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252. *See also* Commissioner of Internal Revenue v. Estate of Bosch, 1967, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886; Commissioner of Internal Revenue v. Hyman, 5 Cir. 1943, 135 F.2d 49.

■ Under Louisiana law the wife has a present, vested ownership interest in one-half of the community property, including its income. United States Fidelity and Guaranty Co. v. Green, 252 La. 227, 210 So.2d 328 (1968); Phillips v. Phillips, 160 La. 813, 107 So. 584 (1926). Because of this vested interest in the income, the Commissioner contends that Mrs. Mitchell is liable individually, and out of her separate property, for income taxes on one-half of the community's income. However, the bare characterization of this ownership interest as vested is not determinative of the issue. Under the law of Louisiana, the wife does not own the income in a separate capacity. She owns the income only derivatively through her one-half ownership interest in the community. It is the community which owns the income and owes the community debts. Poe v. Seaborn, *supra*; Bender v. Pfaff, *supra*; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956).

■■ If the community owns the income it also owes the tax since it is axiomatic that income is taxed to the owner thereof. Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. The Commissioner contends that the liability for income taxes is not a community debt. However, the Supreme Court of Louisiana held to the contrary in Messersmith v. Messersmith, *supra*, where the court said: "[A]ll sums expended for income tax * * * must be held to be debts of the community and to be payable out of community funds." *Id.*, 86 So.2d at 176. *See also* Tate v. Tate, 12 So.2d 506 (La.Ct.App.1943). Note, Creditor's Rights, 25 La.L.Rev. 201 (1964). The question, then, is whether we should "look through" the community concept and hold the wife liable for a community debt because she is the owner of an interest in the community.

■ The wife does not have control or management of the community property until dissolution of the community. Azar v. Azar, 239 La. 941, 120 So.2d 485 (1960). This is true even if the husband is absent from the home. Grandeson v. International Harvester Credit Corp., 223 La. 504, 66 So.2d 317 (1953). During the existence of the community, the husband can alienate the property without her consent. La.Civ.Code Article 2404; Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965). As a corollary of the husband's almost exclusive control over the community property, the nature of the wife's interest in the community is such that the burdens cannot, unless she expressly binds herself, be satisfied out of her separate property. La.Civ. Code Article 2403. It is only when the community is dissolved and she does not renounce the community that the nature of her interest becomes such that it can burden her separate property. Beal v. Ward, 13 La.App. 191, 127 So. 423 (1930). Therefore, since income taxes on community income are community debts, Messersmith, *supra*, the wife's renunciation of the community is not academic. Mrs. Mitchell was not attempting to relieve herself of a debt which she had already incurred, as the Government argues, but was avoiding the assumption of a liability which was the liability of the community and which was to be acquitted out of community funds.

■ Article 2403 of the Louisiana Civil Code establishes the principle that there are separate debts and community debts which must be acquitted out of the respective funds:

> [T]he debts contracted during the marriage enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects.

See First National Bank of Abbeville v. Broussard, 202 La. 315, 11 So.2d 602 (1942). The Louisiana courts have made it crystal clear that the wife's interest in the community is such that she cannot be held liable out of her separate property for community debts. "[T]here are no principles more elementary, more fundamental, more firmly imbedded in the law of Louisiana, and more clearly understood, than the principle that the wife is not personally liable for a community debt * * *." Smith v. Viser, 117 So.2d 673, 674 (La.Ct.App.1960); accord, Personal Finance, Inc. v. Simms, 148 So.2d 176 (La.Ct.App.1962); Brock Furniture Co. v. Carroll, 86 So.2d 715 (La.Ct.App.1956).

■ Although the community is not a taxpayer, the courts have recognized the underlying concept of the community as an entity in tax cases. Commissioner of Internal Revenue v. Chase Manhattan Bank, 5 Cir. 1958, 259 F.2d 231. See also Poe v. Seaborn, supra; Jefferson Lake Sulphur Co. v. Walet, E.D.La. 1952, 104 F.Supp. 20, aff'd, 202 F.2d 433, cert. den., 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346 (1953). The Commissioner asserts that the entity concept is not pertinent because the community is similar to a partnership and the "pass through" provisions of partnership income taxation should apply. The community of acquets and gains, is, however, not similar to an ordinary commercial partnership because the wife may renounce it and thereby absolve herself of all debts of the community, retroactively. This difference was pointed out in Brassac v. Ducros, 4 Rob. 335, 339 (1843), where the Louisiana Supreme Court said:

> Such a partnership does exist in contemplation of law, but only, we apprehend, when she accepts the community; if she renounces it, the community is, as to her, as though it never existed, and everything done during the marriage in relation to the purchase or alienation of property must be considered as done by the husband alone.

The Commissioner relies on those United States Supreme Court cases [4] which held that the husband is not required to report the whole community income on his individual return as authority that the wife is liable for one-half of the taxes. This reliance is misplaced. Bender and Poe did not hold that the wife was required to report the income but rather that she had a sufficient interest in the community income to entitle her to report one-half of the community income. The real significance of the finding of a vested ownership in the wife in Bender was not to make her separately liable but to rebut the Commissioner's reliance there on cases such as Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, where the factor of who earned the income was held determinative of who owed the tax.

■ The holding of Bender is consistent with Louisiana law. Where the husband and wife are living under the community of acquets and gains, the wife may assume the liabilities of the community and be liable for such assumption out of her separate property. La.R.S. 9:103 (1950); Friendly Loans, Inc. v. Morris, 142 So.2d 810 (La.Ct. App.1962). But to extend Bender to require the wife to report the income would be destructive of the Louisiana system of community property without any clear statutory authorization. This we refuse to do.

---

4. Poe v. Seaborn, supra; Bender v. Pfaff, supra.

**6**

The case at hand is also distinguishable from those cases cited by the Commissioner where the wife, after having signed a return, was held liable for one-half of the income tax. E. g., United States v. Malcolm, 1931, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714; Commissioner of Internal Revenue v. Hyman, 5 Cir. 1943, 135 F.2d 49; Saenger v. Commissioner of Internal Revenue, 5 Cir. 1934, 69 F.2d 633. Since the wife in those cases had signed a return, she had assumed the liability for the tax. Therefore the issue of her liability for the tax was not in dispute.[5]

Mrs. Mitchell might have been held liable for the income taxes if she had accepted the benefits upon the dissolution of the community. She elected, however, to renounce the community pursuant to Article 2410 of the Louisiana Civil Code, which specifically provides that such renunciation exonerates her from all "debts contracted during the marriage." We are not persuaded by the Commissioner's assertion that the term "debts contracted during the marriage" should be limited to debts created by contract. In discussing the term "debts contracted", Planiol, 3 Civil Law Treatise, Part 1, § 1086 (1959), would read the term to mean debts incurred by any means, whether contract, tort or statute. This interpretation of the term is more in keeping with the purpose of the renunciation provision—to protect the wife's separate property from onerous debts of the community which the husband incurred and did not satisfy, factors over which the wife had no control.

Under Louisiana law, absent the willingness of the husband to divulge to the wife information concerning the financial status and affairs of the community, she has no way of knowing nor means to compel him to inform her of the community's assets, liabilities or income. She could neither prepare a return showing the community income nor pay the tax. She has no power to guarantee that the community will be solvent enough to satisfy the tax liability.[6] As a result, if she is held liable for the income taxes, she may have no property with which to satisfy the debt unless the community is dissolved in a solvent state, a factor over which she has no control. Even if the community is solvent, it is impossible for the wife to reach its assets until its dissolution because under § 2403 of the La.Civ.Code a separate debt (which is what the Commissioner is asserting against Mrs. Mitchell) may not be acquitted out of the community fund. Thus, as pointed out in United States v. Robbins, 1926, 269 U.S. 315, 328, 46 S.Ct. 148, 70 L.Ed. 285, "[T]he fund taxed, while liable to be taken for his debts, is not liable to be

---

5. We are not convinced that Smith v. Donnelly, E.D.La.1946, 65 F.Supp. 415, decided otherwise. There was no mention in *Smith* of a return, but the court cited *Saenger* and *Hyman* as the only authority for its sweeping conclusion that the wife is liable for one-half of the income tax of the community.

6. Article 2404 of the Louisiana Civil Code requires that in order for the wife to have an action against the husband for fraudulent disposition of the community assets said disposition must be made with an "intent to injure the wife." As the United States Supreme Court pointed out in Fernandez v. Wiener, 1945, 326 U.S. 340, 349, n. 7, 66 S.Ct. 178, 90 L.Ed. 116:

Where the husband has aliened some part of the community in fraud of his

wife's rights, she or those representing her have an action for reimbursement against the husband or his representatives upon the termination of the community, *but not before,* Guice v. Lawrence, 2 La.Ann. 226, 228. The fraud required for an action of this kind seemingly must be intentional and *the motive for the transaction.* [emphasis supplied.]

*See also* Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956). Although the wife may obtain a judicial separation of property without dissolution of the marriage, this remedy is difficult to obtain and somewhat illusory because the wife must show prior mismanagement and thus the funds may have already been dissipated.

taken for the wife's * * * so that the remedy for her failure to pay might be hard to find." If Mrs. Mitchell had not fortuitously inherited property from her mother, she would not have obtained any assets with which to satisfy the tax liability and the problem recognized in *Robbins* would have been real—Mrs. Mitchell would be liable for taxes for which she would be powerless to obtain the funds to pay.

Our holding does not leave the Commissioner without recourse. Under Louisiana law the husband is liable for the community debts that may be satisfied both out of the community and out of his separate property. Poindexter v. Louisiana & A. Ry. Co., 170 La. 521, 128 So. 297 (1930); Rouchon v. Rocamora, 84 So.2d 873 (La.Ct.App.1956); Gosserand v. Monteleone, 164 La. 397, 113 So. 889 (1927). The rationale for this liability is not that the husband's ownership interest in the community should subject him to such liability but rather that as head and master of the community he should be liable for the debts he has incurred with respect to community property, and that it would be inequitable to require the creditor to distinguish between the community property and the husband's separate property. Note, Creditor's Rights, 25 La.L.Rev. 201 (1964).

The Commissioner's contention that Mrs. Mitchell incurred the statutory penalties under §§ 6651, 6653 and 6654 of the Code fails because she was under no duty to file a return under § 6012 of the Code since she had no separate income.

Since Mrs. Mitchell owes no tax, obviously her transferee, Mrs. Jane Sims, does not either.

Reversed.

SIMPSON, Circuit Judge (dissenting):

I respectfully dissent.

I would affirm the Tax Court upon the basis of its opinion, reported at 51 T.C. 641.